**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

| | |
|---|---|
| VINCENT BURRIS, | |
| Plaintiff, | Case No. 3:25-cv-188 |
| v. | **COMPLAINT AND JURY TRIAL DEMAND** |
| EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., | |
| Defendants. | |

## COMPLAINT

Vincent Burris ("Plaintiff") brings this action on an individual basis, against Equifax Information Services, LLC, ("Defendant Equifax" or "Equifax") and Experian Information Solutions, Inc. ("Defendant Experian" or "Experian") (cumulatively "Credit Bureau Defendants" or "Defendants") for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et. seq.*, arising out of Defendant's mixing Plaintiff's credit file with another consumer.

## INTRODUCTION

1.      The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making

by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.     However, unfortunately, this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them. In fact, the Defendants acknowledge this potential for misuse and resulting damage every time they sell their respective credit monitoring services to a consumer.

3.     The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.     These CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.     Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.     "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by

credit reporting agencies." *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

7.    Congress made the following findings when it enacted the FCRA in 1970:

    (a)    The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

    (b)    An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

    (c)    Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

    (d)    There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

8.    Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

9.    The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

    [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make

him unemployable or uninsurable, as well as deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)] (emphasis added).

10.     Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et. seq.*, ("FCRA"), the federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

11.     The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

12.     In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S.C. § 1681(a)(4).

13.     The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items

of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

14. A recurring and *known* issue within the credit reporting industry is the creation of "mixed files."

15. A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

16. "Mixed files" create a false description and representation of a consumer's credit history.

17. The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

18. Mixed files are not a new phenomenon. Defendants have been on notice of the existence of mixed files, and the fact that their procedures for creating credit files, including their matching algorithms, are prone to frequently cause mixed files, for over thirty (30) years. *See Thompson v. San Antonia Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

19. More recently, Defendant has been the subject of numerous state attorney general actions relating to its mixed file problem.

20. For example, in 2015, the New York Attorney General filed charges and settled claims with Defendants over mixed files.[1] *See In the Matter of Eric T. Schneiderman, Attorney*

---

[1] https://ag.ny.gov/press-release/2015-ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three Last visited May 17, 2022; *see also* https://ag-ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited May 17, 2022.

*General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and Trans Union LLC.*

21. Notwithstanding Defendants' notice and being subject to repeated enforcement actions, mixed files continue to occur despite consumers' unique personal identifying information, such as Social Security numbers, date of birth, and addresses.

22. Another consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both. This occurs when a consumer's file is mixed with that of another consumer, and either of those consumers applies for credit, housing, insurance, or employment, and Defendants sell information pertaining to one consumer in response to the application of the other.

23. Defendants have been sued thousands of times wherein an allegation was made that Defendants violated the FCRA. Moreover, Defendants are sued, at a minimum, hundreds of times each year wherein an allegation is made that Defendants mixed a consumer's credit file with that of another consumer.

24. FCRA lawsuits have resulted in multi-million-dollar verdicts for consumers who fall victim to a mixed credit file.

25. For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC*, District of Oregon, Case NO. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas's personal and credit information with another consumer's and failing to unmix them despite Ms. Thomas' numerous disputes. The jury awarded Ms. Thomas $300,000.00 in actual damages and $5,000,000.00 in punitive damages. Despite the verdict, Defendants continue to mix consumers' credit files with other consumers' credit files.

26.     In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC*, Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $219,000.00 in actual damages and $2,700,000.00 in punitive damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Defendants continue to mix consumers' credit files with other consumers' credit files.

27.     In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC*, District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $180,000.00 in actual damages and more than $18,000,000.00 in punitive damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Miller' numerous disputes. Despite the verdict, Defendants continue to mix consumers' credit files with other consumers' credit files.

28.     More recently, a jury assessed a $60 million dollar verdict against Trans Union for mixing innocent persons as terrorists and drug dealers by matching consumers with the Office of Foreign Asset Control's "terrorist alert" list based on first and last name alone. *See Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2017 WL 5153280, at *1 (N.D. Cal. Nov. 7, 2017), *aff'd in part, vacated in part, rev'd in part sub nom. Ramirez v. TransUnion, LLC*, 951 F.3d 1008 (9th Cir. 20020). Despite the verdict, Defendants continue to mix consumers' credit files with other consumers' credit files.

29.     "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong evidence is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints

similar to Dalton's against CAI" is relevant to willfulness under the FCRA). Moreover, repeated noncompliance with statutory duties can establish that the defendants acted willfully. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) (punitive damages can be awarded based on "reckless disregard for a statutory duty").

30. No less than three federal Courts of Appeal have held a consumer reporting agency violates 15 U.S.C. § 1681e(b) and may be found to have willfully violated the FCRA when they mix one consumer's file with another consumer's.

31. Notably, the Federal Trade Commission has specifically warned consumer reporting agencies, including Defendants, to review their procedures when a mixed file occurs.

32. Despite federal and state law, Congressional mandate, federal and state enforcement actions, and thousands of consumer lawsuits, mixed credit files remain a significant problem for innocent consumers, including Plaintiff.

33. Plaintiff's claims arise out of the Defendants' blatantly inaccurate credit reporting, wherein Defendants published in a consumer report about Plaintiff the information of another consumer because Defendants mixed Plaintiff's credit file with that of an unrelated and distinct consumer.

34. Accordingly, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b); and for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and in fact, the product of a mixed file, and for failing to delete the disputed information from Plaintiff's credit file, in violation of the FCRA, 15 U.S.C. § 1681i.

35.     As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs and attorneys' fees from the Defendants for their willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*., as described herein.

<u>PARTIES</u>

36.     Vincent Burris ("Plaintiff") is a natural person residing in Charlotte, North Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

37.     Defendant Equifax Information Services, LLC ("Defendant Equifax" or "Equifax") is a limited liability company with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309, and is authorized to do business in the State of North Carolina, including within this District. Equifax can be served through its registered agent, Corporation Service Company, at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

38.     Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

39.     The information Equifax collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Equifax also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

40.     Equifax collects and maintains such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether Equifax collects and maintains information about them. Not only that, but consumers cannot remove information that

9

Equifax collects and maintains about them from the Equifax database. Further, Equifax sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Equifax sold.

41. Defendant Experian Information Solutions, Inc. ("Defendant" or "Experian") is a corporation with a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626, and is authorized to do business in the State of North Carolina, including within this District. Experian can be served through its registered agent, C T Corporation System, at 330 North Brand Boulevard, Glendale, California 91203.

42. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

43. The information Experian collects, maintains, and sells includes confidential details about the income, finances, credit histories, address histories, application histories, credit review histories, and employment histories of 245 million Americans. Experian also collects consumers' personal identifiers, such as Social Security Numbers ("SSNs"), dates of birth, telephone numbers, and addresses.

44. Experian collects and maintains such information about consumers, whether consumers like it or not. Consumers do not have a choice as to whether Experian collects and maintains information about them. Not only that, but consumers cannot remove information that Experian collects and maintains about them from the Experian database. Further, Experian sells that information about consumers for its unilateral profit, none of which is shared with the Plaintiff, who is the subject of the very data that Experian sold.

## JURISDICTION AND VENUE

45.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

46.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## SUMMARY OF THE FAIR CREDIT REPORTING ACT

47.     The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

48.     The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

49.     Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

50.     To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C.

§ 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

51.     The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

## DEFENDANTS' PROCESSING OF CREDIT INFORMATION

52.     Defendants regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

53.     These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

54.     Defendants collect information from thousands of furnishers.

55.     The process by which Defendants receive, sort, and store information is largely electronic.

56.     Furnishers report credit information to Defendants through the use of coded tapes that are transmitted to Defendants on a monthly basis through software known as Metro 2.

57.     Defendants take credit information reported by furnishers and creates consumer credit files.

58.     Defendants maintain credit files on more than 200 million consumers.

59.     Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

## DEFENDANTS' MIXED FILE PROBLEM

60.     Defendants know that different consumers have similar names.

61.    Defendants know that different consumers can have similar Social Security numbers.

62.    Defendants know that different consumers with similar names can also have similar Social Security numbers.

63.    Defendants know that public records often do contain identifying information such as Social Security numbers or dates of birth.

64.    Defendants match tradelines and public records to a consumer credit file by comparing the information about the consumer associated with the tradeline or public record to the information they maintain about the consumer in the consumer's credit file or files.

65.    Defendants accomplish this matching of credit information to consumer credit files through the use of certain matching algorithms or database rules.

66.    From time to time, Defendants' matching algorithms match information belonging to one consumer to the credit file of another consumer; resulting in what's commonly known as in the credit reporting industry as a mixed or merged credit file.

67.    Mixed files are not a new phenomenon. In fact, as long ago as the early 1990s, the Federal Trade Commission ("FTC") (the government agency charged with enforcement of the FCRA), entered into individual Consent Decrees with each of the major CRAs, specifically including Defendants, regarding its significant failures and deficiencies with respect to mixed files.

68.    Despite Defendants' long-standing and specific knowledge of the mixed file problem, Plaintiff's credit report was still generated by Defendants containing information belonging to another consumer.

69.     A mixed or merged credit file is the result of Defendants' inaccurately mixing personal identifying information and credit information and/or an entire credit file belonging to one consumer into the credit file of another consumer.

70.     There are many different possible causes for the mixing of credit files but all of them relate in one way or another to the algorithms and/or database rules used by Defendants to match personal identifying information and credit information, including public record information, to a particular consumer's credit file.

71.     The success or failure of these algorithms or rules is both a function of the rules themselves and of the information provided by the furnishers of the tradeline information to Defendants.

72.     A mixed consumer report could be caused by an improper algorithm just as it could be caused by the inaccurate reporting of a consumer's personal "indicative" information (e.g., name, Social Security number, address, date of birth, etc.) by the furnishers to Defendants.

73.     Accordingly, the database rules determine which credit files are selected by the algorithm and merged to create a complete consumer report.

74.     Therefore, a mixed consumer report is sometimes the result of the mixing of two or more consumer credit files belonging to different consumers into one consumer report.

## FACTUAL ALLEGATIONS

### Plaintiff's Mixed Credit File Discovery and Numerous Disputes Thereon

75.     Plaintiff regularly monitored his credit files to ensure a good credit standing and peak credit worthiness.

76.     Through the monitoring of his credit profile, in or around 2022, Plaintiff discovered an unrecognized account to which Plaintiff understood he had no relation.

14

77.     Specifically, Plaintiff discovered a rental property account included in his credit files with the three major credit bureaus (including Defendants Equifax and Experian).

78.     The credit account was presented with the tradeline name of "Esusu/ S.L. Nusbaum Realty Co." and appeared with the opening date of March 1, 2022.

79.     Plaintiff was concerned about the reporting of this inaccurate account, fearing that it would make him less credit-worthy, thereby detracting from his credit and financial opportunities.

80.     In addition to the reporting of this inaccurate account as belonging to Plaintiff, upon information and belief, Defendants further included numerous items of personally identifying information—none of which belonged to Plaintiff. This includes an inaccurate birth year and address.

81.     By reporting the credit account and other personal information in the credit file presumably about Plaintiff, despite the fact that the account and information do not belong to Plaintiff, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information contained within Plaintiff's credit files and consumer reports, in violation of 15 U.S.C. § 1681e(b).

82.     Plaintiff undertook numerous attempts to correct his Equifax and Experian credit files by submitting numerous disputes between 2022 and May 2023 through Experian's and Equifax's online dispute portals. On some occasions, the inaccurate information was left entirely uninvestigated or unreasonably reinvestigated. On other occasions, the disputed information was corrected but only to later be reinserted into Plaintiff's credit file forcing Plaintiff to continue his disputes.

83.     As such, upon information and belief, Defendants failed to conduct reasonable investigations of Plaintiff's numerous disputes between the time period of 2022 through in or around April 2023, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

84.     Upon information and belief, to the extent that Defendants reinvestigated the information that Plaintiff disputed, and/or determined same to be inaccurate, and/or deleted the inaccurate items disputed, only to later reinsert the inaccurate contents back into Plaintiff's report subsequently thereafter, Defendants violated 15 U.S.C 1681i(a)(5)(B) for: the failure to reinsert the information pursuant to the certification of the furnisher of same certifying that the information is complete and accurate; failure to provide notice to Plaintiff informing him within five business days of the reinsertion that the information was again included into his credit files and failing to provide the business name, address, and telephone number of any furnisher of the information reinserted that was contacted, or if any furnisher of information contacted the respective consumer reporting agencies in connection with the reinsertion of such information; and failing to provide Plaintiff a notice that he has a right to add a statement to his consumer file disputing the accuracy or completeness of the disputed information.

85.     Additionally, upon information and belief, Defendants violated 15 U.S.C 1681i(a)(5)(C) for their failure to maintain reasonable procedures designed to prevent the reappearance of the deleted items of information in Plaintiff's consumer files.

### Plaintiff's May 2023 Disputes to Defendants

86.     In or around May 2023, continuing to worry that something was very wrong with his credit files, Plaintiff disputed the inaccurate Esusu/ S.L. Nusbaum Realty Co. account that was

appearing in his credit file with the opening date of March 1, 2022, through the Defendants' online portal.

87.     Plaintiff placed Defendants on plenary notice of his mixed credit files by relaying the erroneous personal identifying information associated with his credit files and reports.

88.     Plaintiff sufficiently identified himself, his credit file, and provided ample corroboration to demonstrate the veracity of his dispute contentions.

89.     Plaintiff requested that Defendants reinvestigate the disputed information, correct the reporting, and send him a corrected copy of his credit report.

**Defendants Unreasonable Dispute Reinvestigation**

90.     Defendant Equifax received Plaintiff's May 2023, dispute in or around May 2023.

91.     Defendant Experian received Plaintiff's May 2023, dispute in or around May 2023.

92.     On or about May 9, 2023, Defendant Equifax issued a dispute response to Plaintiff stating that the disputed Esusu/ S.L. Nusbaum Realty Co. account was deleted from Plaintiff's Equifax credit file and reports.

93.     On or about May 9, 2023, Defendant Experian issued a dispute response to Plaintiff stating that the disputed Esusu/ S.L. Nusbaum Realty Co. account was deleted from Plaintiff's Experian credit file and reports.

94.     However, upon information and belief, Defendants continued to report the Esusu/ S.L. Nusbaum Realty Co. account to Plaintiff's credit file and reports.

95.     Specifically, as of November 2024, Defendants continued to report the Esusu/ S.L. Nusbaum Realty Co. account to Plaintiff's credit file and reports.

96.     Defendants failed to conduct a reasonable investigation of Plaintiff's May 2023 disputes, or any reinvestigation whatsoever, to determine whether the disputed information was

inaccurate and record the current status of the disputed information as it continued to maintain the mixed file which led to the reinsertion of the inaccurate credit information to Plaintiff's Equifax and Experian credit files and reports, in violation of 15 U.S.C. § 1681i(a)(1)(A).

97.     Moreover, Defendants violated 15 U.S.C 1681i(a)(5)(C) for their failure to maintain reasonable procedures designed to prevent the reappearance of the deleted items of information in Plaintiff's consumer files.

**Plaintiff's November 2024 Disputes to Defendants**

98.     In or around November 2024, continuing to worry and fear for his credit health after realizing that the previously disputed account was reinserted, Plaintiff disputed the inaccurate Esusu/ S.L. Nusbaum Realty Co. account that again appeared in his credit file with the opening date of March 1, 2022—despite Plaintiff's previous extensive disputes challenging same—through the Defendants' online portal.

99.     Plaintiff again placed Defendants on plenary notice of his mixed credit files and thereby Defendant's defective procedures and algorithms allowing for same, by relaying the erroneous personal identifying information associated with his credit files and reports, in addition to the Esusu/ S.L. Nusbaum Realty Co. account that did not belong to Plaintiff.

100.     Plaintiff sufficiently identified himself, his credit file, and provided ample corroboration to demonstrate the veracity of his dispute contentions.

101.     Plaintiff requested that Defendant reinvestigate the disputed information, correct the reporting, and send him a corrected copy of his credit report.

**Defendants Unreasonable Dispute Reinvestigation**

102.     Defendant Equifax received Plaintiff's November 2024, dispute in or around December 2024.

103.    Defendant Experian received Plaintiff's November 2024, dispute in or around December 2024.

104.    On or about December 10, 2024, Defendant Equifax issued a dispute response to Plaintiff stating that the disputed Esusu/ S.L. Nusbaum Realty Co. account was deleted from Plaintiff's Equifax credit file and reports.

105.    On or about December 6, 2024, Defendant Experian issued a dispute response to Plaintiff stating that the disputed Esusu/ S.L. Nusbaum Realty Co. account was deleted from Plaintiff's Experian credit file and reports.

106.    However, upon information and belief, Defendants continue to mix Plaintiff's credit file with that of another consumer's despite Plaintiff's disputes placing Defendants on plenary notice of the credit file mixture and Defendants' unreasonable procedures that persist in allowing same.

107.    Upon information and belief, Defendants failed to conduct a reasonable investigation of Plaintiff's November 2024 dispute, or any reinvestigation whatsoever, to determine whether the disputed information was inaccurate and record the current status of the disputed information as it continued to maintain the mixed file which led to the reinsertion of the inaccurate credit information to Plaintiff's Equifax and Experian credit files and reports, in violation of 15 U.S.C. § 1681i(a)(1)(A).

108.    Thereafter, and upon information and belief, Defendants failed to unmix Plaintiff's credit file from that of the other consumer and likely Defendant continued to report the other consumer's information to Plaintiff's credit file.

109.     At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

110.     At all times pertinent hereto, Defendants' conduct, as well as that of their respective agents, servants, and/or employees, were intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

111.     Defendants are aware of the shortcomings of their procedures and intentionally choose not to comply with the FCRA to lower their costs.  Accordingly, Defendants' violations of the FCRA are willful.

112.     As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, fear of continued reinsertions of the inaccurate items of information, and embarrassment of possible credit denials and of having another consumer's personally identifying information and credit information mixed into Plaintiff's credit file.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim for Relief Against Defendants Equifax and Experian)

113.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

114.     The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure **_maximum possible accuracy_** of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

115.     On multiple occasions, Defendants prepared patently false consumer reports concerning Plaintiff.

116.     Defendants mixed another consumer's personal and credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

117.     Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

118.     Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

119.     As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, fear of continued reinsertions of the inaccurate items of information, and embarrassment of possible credit denials and of having another consumer's personally identifying information and credit information, mixed into Plaintiff's credit file.

120.     Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

121.     Plaintiff is entitled to recover attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendants Equifax and Experian)**

122.     Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

123.     The FCRA mandates that Defendants conduct a reasonable reinvestigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  *See* 15 U.S.C. § 1681i(a)(1).  The FCRA imposes a 30-day time limit for the completion of such an investigation. *Id.*

124.     The FCRA provides that if Defendants conduct its reinvestigation of disputed information and confirms that the information is, in fact, inaccurate or it is unable to otherwise verify the accuracy of the disputed information, it is required to delete the item of information from the consumer's file.  *See* 15 U.S.C. § 1681i(a)(5)(A).

125.     Plaintiff initiated a dispute with Defendants and disputed inaccurate and mixed information reporting in his credit file and requested that Defendants correct and/or delete the inaccurate, misleading, and highly damaging information belonging to an unrelated consumer.

126.     Defendants failed to properly address and reinvestigate Plaintiff's numerous disputes as the underlying mix, and procedures and algorithms causing same, persisted.

127.     Defendants violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation through failing to unmix the Plaintiff's credit and by failing to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which it received notice of Plaintiff's dispute; and by failing to maintain reasonable procedures with which to filter and verify information in Plaintiff's credit files. Specifically, Defendants violated 15 U.S.C. § 1681i by continuing to maintain the mixed file which led to the original reporting and reinsertion of the inaccurate credit information to Plaintiff's Equifax and Experian credit files and reports, in violation of 15 U.S.C. § 1681i(a)(1)(A).

128.     Furthermore, Defendants violated 15 U.S.C 1681i(a)(5)(C) for their failure to maintain reasonable procedures designed to prevent the reappearance of the deleted items of information in Plaintiff's consumer files.

129.     As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, loss of ability to purchase and benefit from his good credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress including the mental and emotional pain, anguish, humiliation, fear of continued reinsertions of the inaccurate items of information, and embarrassment of possible credit denials and of having another consumer's personally identifying information and credit information mixed into Plaintiff's credit file.

130.     Defendants' conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court

pursuant to 15 U.S.C. § 1681n.  Alternatively, Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

131.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: March 17, 2025

By: */s/ Carlos Randolph Emory*
Carlos Randolph Emory, Bar No. 17161
**The Emory Law Firm, P.C.**
11020 David Taylor Drive, Suite 102
Charlotte, NC 28262
Phone: 704-371-4333
Text Phone: 704-877-0749
Fax: 704-371-3015
E-mail: emorylawecf@gmail.com

Meir Rubinov, NY Bar # 6077887
*Pro Hac Vice Forthcoming*
**CONSUMER ATTORNEYS, PLLC**
68-29 Main Street
Flushing NY 11367
T: 718-640-8123
F: (718) 715-1750
E: mrubinov@consumerattorneys.com

*Attorneys for Plaintiff Vincent Burris*